J-S46018-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM ORTIZ | : | |
| | : | |
| Appellant | : | No. 1302 EDA 2018 |

Appeal from the Judgment of Sentence November 13, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0001116-2012,
CP-51-CR-0001119-2012, CP-51-CR-0001122-2012,
CP-51-CR-0001561-2012

BEFORE:  BENDER, P.J.E., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY SHOGAN, J.:                **FILED:  FEBRUARY 19, 2021**

Appellant, William Ortiz, appeals from the judgments of sentence entered on November 13, 2017, at trial court dockets CP-51-CR-0001116-2012, CP-51-CR-0001119-2012, CP-51-CR-0001122-2012, and CP-51-CR-0001561-2012.  After review, we quash the appeal at CP-51-CR-0001116-2012, and we affirm the judgments of sentence on the remaining dockets.

A prior panel of our Court set forth the relevant facts and procedural history of this case as follows:

> [Appellant] appeals the judgment of sentence in which the Court of Common Pleas of Philadelphia County, after a jury trial, sentenced him to serve an aggregate of 36 to 72 years' imprisonment for four counts of aggravated assault, four counts of possession of an instrument of crime [("PIC")], [one count of] possession of a firearm prohibited, [one count of] firearms not to be carried without a license, and [one count of] carrying firearms on public streets in Philadelphia.[1]

[1] 18 Pa.C.S.A. §§ 2702(a), 907(a), 6105(a)(1), 6106(a)(1), and 6108, respectively.

The facts as recounted by the trial court are as follows:

On July 5, 2011, Sergeant Joseph McDonald responded to a call for multiple gunshots in the area of Ann Street and Amber Street in Philadelphia, Pennsylvania. Sergeant McDonald pulled onto Bellmore Avenue, saw people congregated, and began to clear the area and mark it off as a crime scene. Counsel stipulated to three people being wounded by gunshots: Angel Rodriguez, Sianie Pena, and [A]ppellant. Sergeant McDonald testified the street was littered with numerous shell casings from a handguns [sic] and a shotgun. Sergeant McDonald further testified a blue van, pickup truck, and house near the scene were riddled with bullet holes.

* * *

Officer Ronald Weitman, stipulated as an expert in ballistics and firearms identification, testified that a total of nine fired cartridge casings from a .45 caliber gun, eight fired cartridge casings from a .40 caliber gun, and seven fired cartridge casings from a .380 caliber gun were all recovered near the intersection of Orleans and Amber Street's [sic].

On July 5, 2011, at approximately 5:30 p.m., Angel Rodriguez, entered a grocery store at the corner of Bellmore Avenue and Amber Street, to buy a soda. Mr. Rodriguez left the store and crossed Amber Street, when he was shot in his right rib cage. . . . Mr. Rodriguez did not sustain damage to any organs or vital areas. In his statement made to detective Ronald Aitken on July 12, 2011, Mr. Rodriguez stated that "This guy ([Appellant]), he was in the same store I was in when the shooting occurred." However, at trial, Mr. Rodriguez testified that he could not recall seeing [A]ppellant in the store with him, and stated he knew [A]ppellant from the neighborhood. Mr. Rodriguez

- 2 -

testified he heard gunfire from both directions on Amber Street[,] from Orleans Street to Stella Street.

Sianie Pena, a two-year-old victim, was playing in the backyard of her godfather's house when a stray bullet struck her. . . . Sianie suffered a gunshot wound to her right shoulder. On July 18, 2011, the bullet was removed surgically.

[A]ppellant suffered gunshot wounds to his lower left quadrant, right lower quadrant, and right back area. [A]ppellant was taken to Episcopal Hospital by his friends, Isaias Justiniano and Jose Melendez. [A]ppellant underwent surgery and was released on July 16, 2011.

Detective Leahy testified that Mr. Justiniano's statement from . . . July 6, 2011, indicated, "I noticed that Wreck [("Appellant")][1] was trying to get into his car and as he tried to get up the first time, he fell to his knees. He got back up and then I noticed as he tried to get back up that he dropped a few things from his hands. I couldn't tell what he was dropping, but I heard a loud clang when whatever it was hit the ground." Detective Leahy further testified that he took Mr. Justiniano's statement verbatim, and Mr. Justiniano was given an opportunity to make any changes to his statement after he reviewed it. Detective Leahy testified that two other individuals, Angel Castro and Julio Medina, were arrested with [A]ppellant and Mr. Justiniano, in relation to the shooting on July 5, 2011.

> [1] The written statement indicates "Rec" as the alias for [A]ppellant but the Notes of Testimony indicate "Wreck."

* * *

At trial, Mr. Justiniano testified that he did not recall that part of his statement, and claimed that the word "clang" was not a part of his vocabulary. Mr. Justiniano further testified he had seen [A]ppellant drop his phone and keys, and it must have been the

- 3 -

phone that made the "clang" noise. Mr. Justiniano testified that the reason he failed to tell the detectives that he saw [A]ppellant drop anything was that he was trying to make his statement as short as possible, and wanted to leave.

At trial, Mr. Melendez testified he did not know [A]ppellant by any name other than William Ortiz. Mr. Melendez testified he did not see [A]ppellant drop a gun at the scene of the crime, or mention a gun at all to Detective Ronald Aitken, who took Mr. Melendez's statement. However, Mr. Melendez's testimony was contradictory to his statement made to Detective Aitken on July 6, 2011 and July 12, 2011. In his statement made on July 6, 2011, Mr. Melendez referred to [A]ppellant as "Wreck" multiple times, and acknowledged the name "Wreck" in response to questions made by Detective Aitken. In the same statement, Mr. Melendez stated he saw [A]ppellant drop a "dark-colored gun." In his statement made to Detective Aitken on July 12, 2011, Mr. Melendez stated the reason [A]ppellant was out on the block that particular day was because he "hustles around the area." Mr. Melendez testified that the statement he gave on July 12, 2011, was just a regurgitation of the statement he made on July 6, 2011. Mr. Melendez testified that he did not ID [A]ppellant with a gun on the night of the shooting. However, in his statement made on July 12, 2011, Mr. Melendez confirmed for the detective that he had identified [A]ppellant with a gun on the night of the shooting. Mr. Melendez further testified that the statements he made to Detective Aitken on July 6, 2011, and July 12, 2011 were both dated, signed, and reviewed by Mr. Melendez.

Trial court opinion, 1/30/16 at 2-6 (citations omitted).

***Commonwealth v. Ortiz***, 159 A.3d 595, 3301 EDA 2014 (Pa. Super. filed November 22, 2016) (unpublished memorandum at *1-4) (some internal brackets omitted).

- 4 -

As noted, Appellant was charged at four separate docket numbers. On April 8, 2014, a jury found Appellant guilty of aggravated assault, possession of a firearm prohibited, firearm not to be carried without a license, carrying a firearm in Philadelphia, and PIC at CP-51-CR-0001116-2012; aggravated assault and PIC at CP-51-CR-0001119-2012; aggravated assault and PIC at CP-51-CR-0001122-2012; and aggravated assault and PIC at CP-51-CR-0001561-2012. On June 18, 2014, the trial court sentenced Appellant as follows.

At docket number CP-51-CR-0001116-2012, the trial court imposed a sentence of: nine to eighteen years of incarceration for aggravated assault; five to ten years of incarceration for possession of firearm prohibited; three to six years of incarceration for firearm not to be carried without a license; two to four years of incarceration for carrying a firearm in Philadelphia; and two to four years of incarceration for PIC. The trial court ordered Appellant to serve these sentences consecutively for an aggregate sentence of twenty-one to forty years in prison. Sentencing Order, 6/18/14.

At trial court docket CP-51-CR-0001119-2012, the trial court imposed a sentence of seven and one-half to fifteen years of incarceration for aggravated assault, and a term of two to four years of incarceration for PIC. The trial court ordered Appellant to serve these sentences concurrently with each other and concurrently with the sentences imposed at CP-51-CR-0001116-2012. Sentencing Order, 6/18/14.

At trial court docket CP-51-CR-0001122-2012, the trial court imposed a sentence of seven and one-half to fifteen years of incarceration for aggravated assault, and a term of two to four years of incarceration for PIC. The trial court ordered Appellant to serve these sentences concurrently with each other and concurrently with the sentences imposed at CP-51-CR-0001116-2012. Sentencing Order, 6/18/14.

At trial court docket CP-51-CR-0001561-2012, the trial court imposed a sentence of fifteen to thirty years of incarceration for aggravated assault, and a term of two to four years of incarceration for PIC. The trial court ordered Appellant to serve these sentences concurrently with each other and consecutively to the sentences imposed at CP-51-CR-0001116-2012. Sentencing Order, 6/18/14.

Appellant's aggregate sentence was thirty-six to seventy-two years of incarceration. Appellant filed post-sentence motions that were denied by operation of law, and Appellant filed a timely appeal.

In his earlier appeal, Appellant challenged the sufficiency and weight of the evidence, alleged that the trial court erred in denying a motion for a mistrial, and contended that his sentence was illegal. *Ortiz*, 3301 EDA 2014, (unpublished memorandum at *4-6). A prior panel of this Court concluded that Appellant was due no relief on his challenges to the sufficiency and weight of the evidence, and we found that Appellant's argument regarding a mistrial was meritless. *Id.* (unpublished memorandum at *8-14, 17). However,

Appellant also asserted that the sentence of fifteen to thirty years of incarceration for aggravated assault at CP-51-CR-0001561-2012 was illegal. *Id.* (unpublished memorandum at *14). After review, we agreed with Appellant and concluded that the maximum sentence pursuant to 18 Pa.C.S. § 1103 was twenty years of imprisonment, and we vacated Appellant's sentence in its totality and remanded for resentencing. *Id.* (unpublished memorandum at *15-16).[1]

On remand, the trial court sentenced Appellant as follows:

At trial court docket CP-51-CR-0001116-2012, the trial court imposed a sentence of: nine to eighteen years of incarceration for aggravated assault; five to ten years of incarceration for possession of firearm prohibited; three to six years of incarceration for firearm not to be carried without a license; two to four years of incarceration for carrying a firearm in Philadelphia; and two to four years of incarceration for PIC. The trial court ordered Appellant to serve these sentences consecutively for an aggregate sentence of twenty-one to forty years in prison. N.T., 11/13/17, at 20-21; Sentencing Order, 11/13/17.

---

[1] We note that the trial court indicates that this Court affirmed the discretionary aspects of the original sentence when Appellant appealed the first time. N.T., 11/13/17, at 19. This is inaccurate. Appellant did not challenge the discretionary aspects of his sentence in the first appeal, and this Court issued no ruling on the subject. Rather, we vacated Appellant's judgment of sentence *in toto* and remanded for the trial court to resentence Appellant on all counts. *Ortiz*, 3301 EDA 2014, (unpublished memorandum at *15-18).

At trial court docket CP-51-CR-0001119-2012, the trial court imposed a sentence of seven and one-half to fifteen years of incarceration for aggravated assault, and a term of two to four years of incarceration for PIC. The trial court ordered Appellant to serve these sentences concurrently with each other and concurrently with the sentences imposed at CP-51-CR-0001116-2012. N.T., 11/13/17, at 20-21; Sentencing Order, 11/13/17.

At trial court docket CP-51-CR-0001122-2012, the trial court imposed a sentence of seven and one-half to fifteen years of incarceration for aggravated assault, and a term of two and one-half to five years of incarceration for PIC. The trial court ordered Appellant to serve the sentence for aggravated assault concurrently but ordered the PIC sentence to be consecutive to the sentences imposed at CP-51-CR-0001116-2012. N.T., 11/13/17, at 11-12, 20-21; Sentencing Order, 11/13/17.

At trial court docket CP-51-CR-0001561-2012, the trial court imposed a sentence of ten to twenty years of incarceration for aggravated assault, and a term of two and one-half to five years of incarceration for PIC. The trial court ordered Appellant to serve these sentences consecutively to each other and consecutively to the sentences imposed at CP-51-CR-0001116-2012. N.T., 11/13/17, at 20-21; Sentencing Order, 11/13/17. Thus, when the sentences at all four dockets were considered, it resulted in an aggregate sentence of thirty-six to seventy-two years of incarceration. N.T., 11/13/17, at 11, 21.

On November 15, 2017, Appellant filed timely post-sentence motions at CP-51-CR-0001119-2012, CP-51-CR-0001122-2012, and CP-51-CR-0001561-2012. However, Appellant did not file a post-sentence motion at CP-51-CR-0001116-2012. On March 28, 2018, the trial court denied Appellant's post-sentence motions.

On April 11, 2018, Appellant properly filed a separate appeal at each of the four aforementioned trial court dockets.[2] *See Commonwealth v. Walker*, 185 A.3d 969, 971 (Pa. 2018) (holding that Pa.R.A.P. 341 and its Note require an appellant to file separate notices of appeal when a single order resolves issues arising on more than one trial court docket). Although each of Appellant's appeals included all four trial court dockets, the inclusion of superfluous docket numbers does not invalidate the appeals or require quashal under *Walker* or Pa.R.A.P. 341. *Commonwealth v. Johnson*, 236 A.3d 1141, 1148 (Pa. Super. 2020).

We are constrained to quash one of the appeals, however, on a separate jurisdictional basis. As noted, Appellant filed post-sentence motions at CP-51-CR-0001119-2012, CP-51-CR-0001122-2012, and CP-51-CR-0001561-2012. Thus, the time for filing an appeal was tolled at those dockets until the trial court denied the motions on March 28, 2018. Pa.R.Crim.P. 720(A). Therefore, Appellant's April 11, 2018 appeals at CP-51-CR-0001119-2012,

_____

[2] This Court docketed all four appeals at Superior Court docket number 1302 EDA 2018. Notice of Appeal Docketing Letter, 5/10/18.

CP-51-CR-0001122-2012, and CP-51-CR-0001561-2012 were timely. However, because Appellant did not file a post-sentence motion at CP-51-CR-0001116-2012, the thirty-day appeal period was not tolled, and Appellant had until December 13, 2017, to file an appeal at that docket. *See* Pa.R.A.P. 903 (notice of appeal shall be filed within thirty days after the entry of the order from which the appeal is taken). Appellant did not file an appeal at CP-51-CR-0001116-2012 until April 11, 2018. Therefore, the appeal at CP-51-CR-0001116-2012 was untimely, and we are without jurisdiction to consider it. *Commonwealth v. Capaldi*, 112 A.3d 1242, 1245 (Pa. Super. 2015). Accordingly, we quash the appeal at CP-51-CR-0001116-2012, and we address only the appeals at CP-51-CR-0001119-2012, CP-51-CR-0001122-2012, and CP-51-CR-0001561-2012.

Appellant raises the following issue:

Did not the lower court abuse its discretion by ordering Appellant's sentences to run consecutively without giving adequate reasons on the record, where the reasons given were the severity of the offense and a desire to preserve a previously ordered aggregate sentence, without acknowledgment that said sentence amounted to a life sentence?

Appellant's Brief at 3.

Appellant's issue presents a challenge to the discretionary aspects of his sentence. We note that "[t]he right to appellate review of the discretionary aspects of a sentence is not absolute." *Commonwealth v. Zirkle*, 107 A.3d 127, 132 (Pa. Super. 2014). Rather, where an appellant challenges the discretionary aspects of a sentence, the appeal should be considered a petition

- 10 -

for allowance of appeal. ***Commonwealth v. W.H.M.***, 932 A.2d 155, 163 (Pa. Super. 2007).

As we observed in ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010) (citing ***Commonwealth v. Evans***, 901 A.2d 528 (Pa. Super. 2006)):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, ***see*** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, ***see*** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

***Id***. at 170. Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. ***Commonwealth v. Kenner***, 784 A.2d 808, 811 (Pa. Super. 2001).

Here, the first three requirements of the four-part test are met: Appellant filed a timely appeal; Appellant preserved the issues in his post-sentence motions; and Appellant included a statement raising the issues in his brief pursuant to Rule 2119(f). ***Moury***, 992 A.2d at 170. Therefore, we address whether Appellant has raised a substantial question requiring us to

review the discretionary aspects of the sentence imposed by the sentencing court.

"We examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Ahmad*, 961 A.2d 884, 886-887 (Pa. Super. 2008). Allowance of appeal will be permitted only when the appellate court determines that there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Commonwealth v. Hartle*, 894 A.2d 800, 805 (Pa. Super. 2006). A substantial question exists where an appellant sets forth a plausible argument that the sentence violates a particular provision of the Sentencing Code or is contrary to the fundamental norms underlying the sentencing process. *Id*.

In his Pa.R.A.P. 2119(f) statement, Appellant asserts that the trial court imposed consecutive sentences resulting in a manifestly excessive sentence and considered only the seriousness of the offenses without providing its reasons for the sentences imposed. Appellant's Brief at 11-12. Appellant avers that upon resentencing, the trial court imposed a thirty-six-to-seventy-two-year term of imprisonment constituting what is tantamount to a life sentence. Appellant's Brief at 13. However, as discussed above, any issues concerning CP-51-CR-0001116-2012, and the sentence imposed at that docket are not before this Court. Accordingly, we may review only the sentences imposed at CP-51-CR-0001119-2012, CP-51-CR-0001122-2012,

and CP-51-CR-0001561-2012; the aggregate sentence at these dockets is fifteen to thirty years of incarceration.

Generally, challenges to the consecutive nature of sentences do not raise a substantial question. *Moury*, 992 A.2d at 171. The imposition of consecutive sentences presents a substantial question only in extreme circumstances, "such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Id.* at 171-172. "The key to resolving the preliminary substantial question inquiry is whether the decision to sentence consecutively raises the aggregate sentence to, what appears upon its face to be, an excessive level in light of the criminal conduct at issue in the case." *Commonwealth v. Gonzalez-Dejusus*, 994 A.2d 595, 598-599 (Pa. Super. 2010).

After review, we cannot conclude that Appellant's aggregate sentence of fifteen to thirty years of incarceration is extreme and excessive for three separate convictions of aggravated assault, which were graded as third-degree felonies, and three convictions of PIC, graded as first-degree misdemeanors. Indeed, the statutory maximum sentences that the trial court could have imposed were sentences of ten to twenty years of incarceration for each aggravated-assault conviction and two and one-half to five years of incarceration for each count of PIC. 18 Pa.C.S. §§ 1103(1) and 1104(1). Thus, the trial court could have imposed an aggregate sentence of thirty-seven and one-half to seventy-five years of incarceration. We do not find that

Appellant's sentence of fifteen to thirty years of incarceration is facially excessive in light of the criminal conduct in issue, and we cannot conclude that Appellant's challenge to the consecutive nature of the sentences raises a substantial question.

Appellant also contends that the trial court relied only on the seriousness of the offenses without providing its reasons for the sentences imposed. Appellant's Brief at 11-12. This challenge raises a substantial question. *See Commonwealth v. Trimble*, 615 A.2d 48 (Pa. Super. 1992) (holding an appellant's claim that the court failed to consider sentencing factors and focused solely on seriousness of the crime raised substantial question); *see also Commonwealth v. Simpson*, 829 A.2d 334, 338 (Pa. Super. 2003) (finding a substantial question where the appellant averred that the sentencing court relied on impermissible factors by considering factors already included in the sentencing guidelines). Because we conclude that Appellant presented a substantial question relative to this claim, we proceed with our analysis.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias, or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006).

> When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of defendant, and it must impose an individualized sentence. The sentence should be based on the minimum confinement consistent with the gravity of the offense, the need for public protection, and the defendant's needs for rehabilitation.

*Commonwealth v. Ferguson*, 893 A.2d 735, 739 (Pa. Super. 2006).

As stated, Appellant contends that the trial court abused its discretion by relying only on the seriousness of the crimes because the nature of the crime is already factored into the offense gravity score ("OGS") in the Sentencing Guidelines. Appellant's Brief at 11. Moreover, Appellant avers that the trial court failed to provide reasons for the sentence. *Id.* at 12. After review, we conclude that Appellant is due no relief.

The record reveals that the trial court considered far more than the seriousness of Appellant's three aggravated-assault convictions and three PIC convictions. Although the seriousness of a crime is indeed reflected in the OGS in our Sentencing Guidelines, 204 Pa. Code § 303.3(a)(1), herein, the trial court provided reasons why Appellant's crimes were beyond the typical aggravated assault or PIC cases:

> THE COURT: Okay. All right. What I recall about this case very clearly is, this is a shootout on the street. Mr. Rodriguez, who was older, sustained a gunshot wound to his right rib cage. And there was a two year old who was playing in her backyard who had a gunshot wound in her right shoulder area that required surgery to remove the bullet. And you were firing multiple gunshots on a crowded street. And for you to sit here and say that this was a minor hiccup and you were on the scene and you had nothing to do with it, amazes me.

- 15 -

N.T., 11/13/17, at 18-19. Thus, the trial court considered Appellant's decision to engage in a gunfight on a public street. Appellant's actions seriously injured innocent bystanders including a two-year old child. Moreover, the trial court had the benefit of a presentence investigation ("PSI") report and understood Appellant's lengthy and violent criminal history. *Id.* at 7-8. It is well settled that when the "sentencing court had the benefit of a [PSI], we can assume the sentencing court 'was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating statutory factors.'" *Moury*, 992 A.2d at 171.

In its opinion, the trial court further explained:

> The Appellant's claim that the [t]rial [c]ourt abused its discretion in sentencing the Appellant is without merit. The claim that the sentence for the Appellant was manifestly excessive ignores the fact that the [t]rial [c]ourt's sentence was within the statutory maximum and sentencing guideline for each of Appellant's convictions. Furthermore, informed by the findings in the pre-sentence investigation to determine an appropriate sentence, the [t]rial [c]ourt properly weighed the gravity of the crime, Appellant's prior criminal history, the need to protect the public, and Appellant's rehabilitative needs. Specifically, he was listed as a Repeat Felony 1 and Felony 2 Offender Category (RFEL) with twenty prior arrests, inflicted severe bodily injury to innocent bystanders, including a [two-]year old girl playing in her godfather's backyard, and was arrested and charged with a robbery while out on bail for this trial. N.T. 11/13/2017 at 5-8.

Trial Court Opinion, 6/12/19, at 6-7.

We do not agree with Appellant's argument that the trial court relied upon only the seriousness of the offenses or failed to provide reasons for the sentence. The trial court specifically enumerated Appellant's lack of regard

for public safety, Appellant's minimization of the gravity of his actions, and Appellant's failure to take any responsibility for his part in the shooting. N.T., 11/13/17, at 19. Moreover, although the trial court discussed the details of Appellant's crimes, these details emphasized why Appellant's actions were more than a "typical" aggravated assault because Appellant went on a shooting spree on a public street. **See Fullin**, 892 A.2d at 848 (affirming an aggravated-range sentence where one of the grounds for the sentence was that the defendant's actions deviated from a typical case of the offense under consideration); **see also Commonwealth v. Caldwell**, 117 A.3d 763, 771 (Pa. Super. 2015) (affirming the trial court's imposition of consecutive sentences and an aggregate term of thirty-one to sixty-two years of incarceration where the trial court specifically considered that defendant fired a gun on a public street and the only reason he did not kill someone was "for the grace of God"). The record reflects that the trial court was aware and considered all relevant sentencing factors, understood the facts underlying this matter, had the benefit of a PSI report, reviewed Appellant's criminal history and inability or refusal to rehabilitate, and imposed sentences within the Sentencing Guidelines on the aggravated assault convictions.[3] N.T., 11/13/17, at 4-19.

_____

[3] Although it appears that the trial court imposed sentences outside of the aggravated range of the Sentencing Guidelines on the PIC convictions, 204 Pa. Code §§ 303.15 and 16(a), Appellant did not argue the trial court's

For the reasons set forth above, we conclude there is no merit to Appellant's claims that the trial court relied on only the seriousness of the crimes and failed to provide the reasons for its sentence. Accordingly, Appellant is entitled to no relief.

The appeal at CP-51-CR-0001116-2012 is quashed. We affirm the judgments of sentence at CP-51-CR-0001119-2012, CP-51-CR-0001122-2012, and CP-51-CR-0001561-2012.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/19/21

---

consideration or application of the Sentencing Guidelines. As such, any claims relative to the application of the Sentencing Guidelines are waived. ***See Commonwealth v. Freeman***, 128 A.3d 1231, 1249 (Pa. Super. 2015) (holding that an argument that is not developed or supported by relevant legal authority is waived on appeal).